Ronald V. DELLUMS et al., Plaintiffs,

v.

James POWELL et al., Defendants.

Civ. A. No. 2271–71.

United States District Court, District of Columbia.

March 10, 1976.

W. K. Kaplan, Washington, D. C., for plaintiffs.

R. B. Battocchi, U. S. Dept. of Justice, E. L. Curry, Asst. Corp. Counsel, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

This matter is now before the Court on Richard Nixon's Motion to Quash Subpoena Duces Tecum, and plaintiffs' opposition thereto. This class action grows out of the arrest of approximately 1200 persons on the steps of the U. S. Capitol during the "Mayday Demonstrations" in 1971. Plaintiffs, persons among those so arrested, seek damages for alleged deprivations of various civil rights, claiming that defendants, former high-ranking officials of the federal and municipal governments, conspired to or negligently subjected them to various violations of their statutory and constitutional rights. In October, 1974 plaintiffs issued a subpoena *duces tecum* directing Mr. Philip Buchen, Counsel to the President, to appear and produce "all tapes and transcripts of White House conversations during the period of April 16 through May 10, 1971 at which 'May Day' demonstrations (5/3–5/7/71) were discussed." Mr. Buchen filed a motion to quash the subpoena, which was denied on November 14, 1974. Nixon then also filed motions to quash and stay the November 14th order. Because of the pendency of the trial and the prospect that lengthy litigation would be necessary to enforce the subpoena of the tapes, the Court on December 2, 1974 stayed the production order of November 14, 1974. Also on December 2nd the Court severed the trial of defendant John Mitchell, due to his involvement in other judicial proceedings. The trial then proceeded against the other defendants. Early in the trial the Court granted another Nixon motion to quash a subpoena *duces tecum* on Mr. Buchen, seeking to allow a witness in the case, John

Dean, access to his own files at the White House to refresh his memory as to the events in question. The Court's granting of that motion to quash was based not on the merits of the matter, but rather on the fact that the trial had already begun and to enforce the subpoena at such a late date would have unacceptably interrupted the proceedings. The subpoena of the Dean files has not been renewed by plaintiffs, and is not now before the Court.

The jury trial of the main part of this case resulted in a substantial verdict for plaintiffs, which is now on appeal. Presently before this Court is the severed case against defendant Mitchell, for which plaintiffs now renew their request for production of the tapes. Nixon continues to request that the subpoena be quashed contending (a) that discovery of a president's confidential conversations or documents is not permissible in civil litigation; (b) that even if discoverable, there has been no showing of compelling need in this instance to overcome a claim of presidential privilege; and (c) that to permit Mr. Buchen to review the tapes and files to locate the subpoena material would "countenance an unlawful wholesale invasion of the confidentiality" of the Nixon materials, as well as invade Nixon's personal privacy insofar as the recorded conversations might be with his wife, doctor, friends, attorney, or daughters.

The Court finds none of Nixon's objections persuasive. First, there is no absolute right of "executive privilege" to shield even an incumbent president from judicial process. *United States v. Nixon,* 418 U.S. 683, 706, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039, 1062 (1974). In that case the Court explicitly declined to establish the bar to judicial process in civil cases which Nixon now seeks to assert: "We are not here concerned with the balance between the President's generalized interest in confidentiality and the need for relevant evidence in civil litigation, . . . ." 418 U.S. at 712 n. 19, 94 S.Ct. at 3109, 41 L.Ed.2d at 1066. And it appears to this Court that the ration-

ale underlying the refusal of the Supreme Court to find an absolute executive privilege in criminal cases applies with very considerable force to the present civil case. The Court need not pass directly on that issue, however, because in the instant case the privilege is invoked not by the President, but by a former President. What is central to the determination of this motion to quash, therefore, is the strength of plaintiffs' showing of importance of the evidence to their case:

> . . . either a former President may not validly claim executive privilege at all, or if he may do so, his claim is entitled to much less weight than that accorded a claim asserted by an incumbent President. It follows that a claim of privilege by a former President may be overcome by a showing less strong than that needed when the incumbent raises the claim.

*Nixon v. Administrator of General Services,* 408 F.Supp. 321, at 67 n. 50, C.A. (D.D.C. 1976) (three judge court). The Court in that case, after upholding the constitutionality of The Presidential Recordings and Materials Preservation Act (P.L. 93–526), specifically provided that pending appeal to the Supreme Court the tapes would be available for proper judicial process. *Id.* at p. 375.

▮ The Court believes plaintiffs have demonstrated a very strong entitlement to discovery of the tapes in question. Plaintiffs claim that a policy or plan was devised by the defendants in this case, including defendant Mitchell, which led to and instigated the allegedly unlawful arrest and detention of plaintiffs on May 5, 1971. Other discovery has established that high-level meetings were held at the Justice Department to plan for the May Day demonstrations. Defendant Mitchell, according to deposition testimony, was briefed on these meetings. At least one top-level White House aide was present at each of these meetings after April 16, the initial date with which the subpoena is concerned. The almost certain inference must be that these aides reported to Nixon on the progress of their planning, and took his reactions and directions back to the Justice Department. It is quite possible, as plaintiffs suggest, especially given the close relationship between Nixon and Mitchell, that the two men discussed the matter either personally or by telephone. If so, the conversations will be among those subpoenaed. And whatever recorded conversations occurred in the White House with regard to the Administration's plans for dealing with the demonstrators could constitute the most direct and central sort of evidence for plaintiffs' case. The Court can scarcely imagine what could be more relevant to the grave allegations in the present case than the actual words of those alleged to have been the conspirators. Nor can the Court perceive any alternative means by which plaintiffs could obtain comparable discovery. They have had considerable difficulty, in particular, in arranging to depose Mitchell, and even should they do so the results are bound to be far inferior to the actual contemporaneous record of the planning for the demonstrations. In short, the showing made by plaintiffs completely overcomes whatever presumptive executive privilege may attach to the former President's interest in the tapes.

The Court is not unmindful of the burden imposed on Mr. Buchen by compliance with this order. The plaintiffs, however, have subpoenaed conversations only over that period of time (the twenty-five days from April 16 to May 10) within which it has been established as highly probable that such discussions took place. Review of the tapes for that period will no doubt require some moderate effort of Mr. Buchen and his staff, but that effort is simply a consequence of Mr. Buchen's custodianship of the tapes, and the unique circumstances surrounding that custody. To hold otherwise would mean that there can be in effect no access to the tapes for proper judicial process, contrary to law and court order. The Court believes the present subpoena is drawn as narrowly as it can be without seriously impairing its value to plaintiffs.

Finally, the Court regards Nixon's claims of wholesale invasion of presidential materials by compliance with this subpoena as frivolous. Mr. Buchen is the officer currently charged by law with responsibility for the tapes. This is not the first time he has had occasion to review the tapes and there is not the slightest indication that his discretion cannot be relied upon in his performance of his duties in this matter. His review of the tapes will be limited to a twenty-five day period, and only those portions responsive to plaintiffs' subpoena will lose their current confidentiality. Further, the fact that he or his staff may overhear conversations between Nixon and his family or the like is a consequence first of the fact that the tapes were made and second of the subsequent circumstances which resulted in their current possession by Mr. Buchen, not a consequence of the continuing administration of justice, of which this subpoena is a part.

It is therefore this 10th day of March, 1976,

ORDERED, that Richard Nixon's Motion to Quash Subpoena Duces Tecum be, and hereby is, denied; and

FURTHER ORDERED, that the December 2, 1974 stay of this Court's November 14, 1974 order be, and hereby is, dissolved; and

FURTHER ORDERED, that Mr. Philip Buchen, Counsel to the President, shall advise the Court within ten days of his estimate of the time required for expeditious compliance with plaintiffs' aforementioned subpoena.