Honorable Ronald V. DELLUMS et al.

v.

James M. POWELL, Chief, U. S. Capitol Police, et al. Richard M. Nixon, Appellant.

No. 80–1134.

United States Court of Appeals, District of Columbia Circuit.

Argued June 16, 1980.

Decided Sept. 25, 1980.

As Amended on Denial of Rehearing Jan. 23, 1981.

---

R. Stan Mortenson, Washington, D. C., with whom Herbert J. Miller, Jr. and James E. Rocap, III, Washington, D. C., were on brief, for appellant.

Warren Kaplan, Washington, D. C., with whom Lawrence H. Mirel, Washington, D. C., was on brief, for appellee.

Before McGOWAN, ROBINSON and EDWARDS, Circuit Judges.

Opinion for the court filed by McGOWAN, Circuit Judge.

Concurring opinion filed by EDWARDS, Circuit Judge.

McGOWAN, Circuit Judge:

In this appeal we are asked for a second time to resolve a dispute over plaintiffs-appellees' attempted discovery of a large number of transcripts of taped conversations between former President Nixon and his associates. Mr. Nixon presented his objections to the production of the transcripts to the District Court in a series of documents styled as a *Vaughn* index. The District Court held that the index failed to present the objections adequately and ordered that the transcripts be turned over to counsel for appellees. For the reasons that follow, we agree with the District Court's

conclusion that Mr. Nixon's "*Vaughn* index" is totally inadequate as a vehicle for presenting his objections to production, but we conclude that the District Court should have directed Mr. Nixon to prepare another index rather than ordered immediate production of the transcripts.

## I.

From the last week in April through the first week in May, 1971, scores of thousands of demonstrators came to Washington, D.C., to protest this country's involvement in the war in Southeast Asia.[1] As part of those protest activities, on May 5, two thousand persons met on the Mall and then moved on to the Capitol steps to give and to listen to antiwar speeches. Approximately 1,200 of the demonstrators were arrested on the Capitol steps, including plaintiffs–appellees in this litigation.[2]

This class action suit, which was brought on behalf of all the persons arrested on the Capitol steps on May 5, 1971, "was predicated on an allegation that the defendant officials [3] had engaged in a civil conspiracy to arrest and detain the class members with the purpose of frustrating their First Amendment right to protest against the war."[4] The District Court dismissed the claims against certain of the defendants and severed the claim against John Mitchell, and after a trial before a jury, judg-

ment was entered in favor of plaintiffs and their class.[5]

In the course of pretrial discovery, appellees had issued a subpoena *duces tecum* to Philip Buchen, then counsel to President Ford, that instructed him to appear and produce "all tapes and transcripts of White House conversations during the period of April 16 through May 10, 1971, at which 'May Day' demonstrations (5/3–5/7/71) were discussed."[6] Mr. Buchen filed a motion to quash the subpoena, which the District Court, on November 14, 1974, denied. When Mr. Nixon learned of the November 14 production order, he filed motions to quash the subpoena and to stay the production order. On December 2, 1974, the District Court granted the stay motion, explaining that the pending trial of the class action suit would be threatened by enforcement of the production order, which would probably engender lengthy litigation. The court never ruled on Mr. Nixon's motion to quash.[7]

Following the trial of the original lawsuit, plaintiffs resumed their action against Mr. Mitchell, the remaining untried defendant, and renewed their request for the tapes and transcripts. Mr. Nixon again interposed an objection to their production, giving the following reasons for his objection:

(1) the doctrine of Presidential or executive privilege absolutely bars discovery

---

1. For a more detailed description of the protest activities during those weeks, see *Sullivan v. Murphy*, 478 F.2d 938, 947–49 (D.C.Cir.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *Dellums v. Powell*, 566 F.2d 167, 211–12, 214–16 (D.C.Cir.1977) (Tamm, J., dissenting), *cert. denied*, 438 U.S. 916, 98 S.Ct. 314, 57 L.Ed.2d 1161 (1978).

2. *See Dellums v. Powell, supra,* 566 F.2d at 173–74.

3. The original defendants were the chiefs of the United States Capitol Police and the District of Columbia Metropolitan Police Department; the District of Columbia; John Mitchell, then Attorney General of the United States; and Richard Kleindienst, Deputy Attorney General of the United States.

4. *Dellums v. Powell, supra,* 566 F.2d at 173 (footnote added).

5. That judgment, as modified, was affirmed in appeals taken by the chief of the United States Capitol Police, and by the District and the chief of the District police department. *Dellums v. Powell,* 566 F.2d 216 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3147, 57 L.Ed.2d 1161 (1978).

 The District Court also entered a directed verdict in favor of defendant Richard Kleindienst. Appellees appealed, and that judgment was affirmed by order, No. 75–2117 (D.C.Cir., Aug. 4, 1977).

6. *Dellums v. Powell,* 70 F.R.D. 648, 649 (D.D.C. 1976), *aff'd in part and rev'd in part,* 561 F.2d 242 (D.C.Cir.1977). Mr. Buchen, as Counsel to the President, was the person with actual physical control of Mr. Nixon's "White House tapes," *Dellums v. Powell, supra,* 561 F.2d at 244.

7. *Dellums v. Powell, supra,* 70 F.R.D. at 649.

of a former President's confidential conversations and documents in civil litigation;

(2) even if the privilege is not absolute and the documents are discoverable, plaintiffs had not made a showing of compelling need sufficient to overcome the claim of Presidential privilege; and

(3) an order permitting Mr. Buchen to review the conversations and files in order to locate material identified in the subpoena "would 'countenance an unlawful wholesale invasion of the confidentiality' of the Nixon materials, as well as invade Nixon's personal privacy insofar as the recorded conversations might be with his wife, doctor, friends, attorney, or daughter." [8]

The District Court rejected all of Mr. Nixon's objections, denied the motion to quash, and dissolved the prior stay of the November 14 production order.[9]

On appeal, this court affirmed in part and reversed in part. *Dellums v. Powell*, 561 F.2d 242 (D.C.Cir.), *cert. denied*, 434 U.S. 880, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977). We rejected the argument that "a formal claim of privilege based on the generalized interest of presidential confidentiality, without more, works an absolute bar to discovery of presidential conversations in civil litigation, regardless of the relevancy or necessity or the information sought." *Id.* at 245–46. Rather, " 'the detrimental effects of disclosure [must be weighed] against the necessity for production shown.' " [10] In addition, we affirmed the District Court's ruling that appellees had made a showing of need sufficient to overcome the claim of Presidential privilege: "[P]laintiffs–appellees have certainly made

at least a 'preliminary showing of necessity' for information that is not merely 'demonstrably relevant' but indeed substantially material to their case." *Id.* at 249 (footnotes omitted). Finally, we reversed and remanded to the District Court on the issue of the level of protection afforded Mr. Nixon's common–law privacy interests by the District Court's production order. The production order could have been read literally to require Mr. Buchen to turn over to appellees' counsel any tape, in its entirety, that contains a conversation relating to the May Day demonstrations, even if the tape also contains other entirely personal conversations as to which Mr. Nixon could maintain that a common–law privilege applies. "In our view," we wrote, "the privacy interests of a former President must be safeguarded." *Id.* at 250.

Our opinion in *Dellums* also indicated the procedures that the District Court should follow on remand to ensure that Mr. Nixon's privacy interests were adequately protected. We suggested [11] that the District Court appoint a professional archivist as special master to the court for the limited purpose of reviewing the designated tape recordings, transcribing those portions of the taped conversations that relate to the May Day demonstrations, and transmitting such isolated transcripts to the District Court. In addition, we stated that

the determination of what constitutes material in compliance with the subpoena shall be left with the Special Master. Following the transmittal of relevant materials to the Court, and before they are turned over to counsel for plaintiffs, Mr. Nixon shall be afforded the right to assert 'any rights, defenses or privileges'— whatever they might be—in accordance

8. *Id.*

9. *Id.* at 651.

10. *Dellums v. Powell*, 561 F.2d 242, 246 (D.C. Cir.1977), *quoting Carl Zeiss Stiflung v. V.E.B. Carl Zeiss*, 40 F.R.D. 318, 327 (D.D.C.1966).

11. As originally filed, our opinion stated that "the District Court *should* appoint a professional Government archivist as a special Master to the Court ..." *Dellums v. Powell*, 561 F.2d 242, 250 (D.C.Cir.1977) (emphasis added).

The opinion was revised "to change 'should' to 'may', to make it clear that the procedure we have outlined is permissive, not mandatory." *Id.* at 252 (supplemental opinion).

On remand, the District Court directed the Administrator of the General Services Administration, the custodian of the tapes, to transcribe appropriate conversations. This was done by the National Archives and Records Service, Nixon Presidential Materials Project.

with the appropriate implementing regulation of the [Presidential Recordings and Materials Preservation] Act. 41 C.F.R. § 105–63.303.[12]

Under such circumstances, we contemplate a procedure in the District Court identical to that outlined in this court's *en banc* opinion in *Nixon v. Sirica, supra*, 159 U.S.App.D.C. at 79, 487 F.2d at 721. While the parties are directed to that order, we think it sufficient to indicate that the procedure there developed contemplates *in camera* review of the challenged material at which time Mr. Nixon will be able to assert any claims of privilege with particularity. Counsel for the plaintiffs will be entitled to inspect the materials in chambers to assist the Court in determining the validity of any claim of privilege. Any ruling adverse to Mr. Nixon is subject to appeal, if that course of action is deemed appropriate.

## II.

On November 8, 1978, the District Court mapped out the procedures that would govern the proceedings on remand. The court's two principal concerns were to identify those conversations that arguably were covered by the subpoena and to ensure that Mr. Nixon was afforded an adequate opportunity to object to the production of the conversation.

In framing the guidelines for the archivist's search to ensure that all relevant conversations were identified and transcribed, the District Court adopted appellees' suggestion that "the Administrator transcribe and produce all conversations relating 'directly or indirectly' or having any bearing or significance to any of the following:"

(1) Anti–war demonstrations;

(2) Anti–war demonstrators;

(3) Plans of the United States government or any officials of the United States government, or any other government, relative to demonstrations held or to be held in Washington, D.C. during April or May, 1971;

(4) Responses of the United States government officials, or officials of any other government, or any private citizens,

---

**12.** *Dellums v. Powell, supra*, 561 F.2d at 250–51 & n.19, *citing* 41 C.F.R. § 105–63.303, which provides:

> In accordance with the provisions of Subpart 105–63.2, and subject to any rights, defenses, or privileges which the Federal Government or any person may invoke, the Presidential historical materials in the custody and control of the Administrator of General Services will be made available for use in any judicial proceedings, and are subject to subpoena or other lawful process. Requests by the Special [Prosecutor] for access to the Presidential historical materials, whether by court subpoena or other lawful process, including access pursuant to § 105–63.302–1 shall at all times have priority over any other requests for the materials.

In *Nixon v. Sirica*, 487 F.2d 700 (D.C.Cir. 1973), referred to in the quotation in text, this court outlined a procedure for evaluating Mr. Nixon's objections to tape production:

> We contemplate a procedure in the District Court, following the issuance of our mandate, that follows the path delineated in *Reynolds* [*United States v. Reynolds*, 345 U.S. 1 (1953)], *Mink* [*EPA v. Mink*, 410 U.S. 73 (1973)], and by this Court in *Vaughn v. Rosen* [484 F.2d 820 (D.C.Cir.1973)]. ... [T]he President will have an opportunity to present more particular claims of privilege, if accompanied by an analysis in manageable segments.

*Id.* at 720–21. The court set out in detail a three–stage procedure, only two parts of which are relevant to this case:

> (1) First,
> [t]he President will present to the District Court all other items covered by the order, with specification of which segments he believes may be disclosed and which not. This can be accomplished by itemizing and indexing the material, and correlating indexed items with particular claims of privilege. On request of either counsel, the District Court shall hold a hearing in chambers on the claims. Thereafter the Court shall itself inspect the disputed items.

*Id.* at 721 (footnote omitted).

> (2) Then,
> [f]ollowing *in camera* hearing and inspection, the District Court may determine as to any items (a) to allow the particular claim of privilege in full; (b) to order disclosure to the grand jury of all or a segment of the item or items; or, when segmentation is impossible, (c) to fashion a complete statement for the grand jury of those portions of an item that bear on possible criminality. The District Court shall provide a reasonable stay to allow the President an opportunity to appeal.

*Id.*

relative to demonstrations or other activities of persons opposed to the war in Vietnam during April or May of 1971; (5) Plans, procedures or proposals for handling persons arrested or to be arrested or otherwise detained or controlled for anti–war activities in Washington, D.C. or elsewhere during April and May, 1971; (6) Authority for law enforcement in the District of Columbia during demonstrations.[13]

The District Court acknowledged the potentially overbroad reach of these search instructions, but noted that Mr. Nixon's interests would not be compromised:

> [A]ny doubts may be resolved in favor of inclusion. In short, the objective of the Administrator should be to ferret out any and all conversations which relate, explicitly or by inference, to the subject of whether and to what extent Mr. Mitchell was involved in the violations of plaintiffs' fundamental constitutional rights during the May Day demonstrations. Defendant Mr. Mitchell and Mr. Nixon will have just and ample opportunities at the administrative appeal, *in camera* review, and appellate appeal stages of this process to raise objections based upon relevance and other privileges.[14]

In addition, the District Court established the following procedures as to transcriptions, access, control, and appeals:

(2) While the transcribed materials are still in custody, possession and control of the Administrator and before their submission to the Court, Mr. Nixon should be given *notice of contemplated release of* the materials and opportunity to file and exhaust his administrative objections, in accordance with 41 C.F.R. 105–63.603 [15] and 41 C.F.R. 105–63.204(f).[16]

(3) Upon compliance with 41 C.F.R. 105–63.204(f), the Administrator will transmit to the Court the materials he deems relevant. Following the transmittal of these materials, but before they are turned over to counsel for plaintiffs, Mr. Nixon shall be afforded the right to assert any rights, defenses, or privileges he may wish to raise in accordance with the provisions of 41 C.F.R. 105–63.303, *Dellums, supra* at 250. These claims of right, defense, or privilege are to be designated by an itemized index of the materials containing correlated descriptions specific enough to identify the basis of the particular claim or claims, *Nixon v. Sirica, supra* at 721, which would be submitted to the Court and opposing counsel at the time the claims are asserted. . . . [17]

Using the District Court's broad "search" guidelines, the archivist transcribed all or portions of 133 conversations [18] encompass-

---

**13.** C.A. 2271–71, Nov. 8, 1978, Memo. Op. at 6, *reproduced at* Appellant's Brief, at Appendix B, at 38.

**14.** *Id.* at 10–11, *reproduced at* Appellant's Brief, Appendix B, at 43–44.

**15.** 41 C.F.R. § 105–63.303 (1978) is reproduced in note 12 *supra*.

**16.** (f) Prior to releasing Presidential historical materials in accordance with an access authorized under §§ 105–63.302 or 105–63.303, the Administrator will give Mr. Nixon notice of the nature and identity of, and at his request allow him access to, those Presidential historical materials which the archivists have determined are covered by the subpoena, or other lawful process, or request. The notice will also inform Mr. Nixon that he may file a claim with the Administrator objecting to the release of all or portions of the described materials within 5 workdays of his receiving

the notice described herein. The claim should detail the alleged rights and privileges of Mr. Nixon which would be violated by the release of the materials. The Administrator will refrain from releasing any of the materials to the requester during this period, and while any claim of right or privilege is pending before him, will refrain from releasing the materials subject to the claim.
41 C.F.R. § 105–63.204(f) (1978).

**17.** C.A. 2271–72, Nov. 8, 1978, Memo. Op. at 17–18 (footnotes added), *reproduced at* Appellant's Brief, Appendix B, at 52–53.

**18.** The Archivist appears to have filed two sets of transcripts, the first an original transcription containing 133 conversations. This set was used by appellant in preparing, and apparently by the District Court in evaluating, the *Vaughn* index. The record on appeal, however, contained only a revised transcription filed one

ing 759 typed pages of transcript. Most of the conversations took place in the Oval Office of the White House; others occurred in the Old Executive Office Building, the Lincoln Sitting Room, or the Cabinet Room. Some conversations were carried out over the telephone, while others took place among up to two dozen persons actually present in the place described.

Mr. Nixon bypassed the administrative appeal provided for by both this court's opinion and the District Court's order of November 8, 1978. Instead, he initially presented his objections to the production of parts or all of some of the transcripts directly to the District Court. He presented his "claims of right, defense or privilege" in a series of documents that he claims satisfies this court's requirement of a *Vaughn*–type index.

Mr. Nixon's index consists of three separate documents. First, he submitted one– or two–page summaries of all 133 conversations. The summaries identify the date, time of day, and place of each conversation, as well as the participants. He purports to have summarized every topic of conversation included in the transcript. At the bottom of every page are listed "Objections to Production"; in every case, the objections are (1) "Irrelevant," (2) "Presidential privilege," (3) "Privacy," or a combination of these. As indicated in the table set out in the margin of this opinion, Mr. Nixon objected to all or parts of 95 conversations on all three grounds while one conversation is not objected to at all.[19]

Second, Mr. Nixon filed papers that divide the numbered conversations into four categories. The four categories are as follows:

*Category I*: "all conversations, or portions thereof, which mentioned in any way activities, actual or threatened, at the Capitol and any matters pertaining thereto" (23 conversations or portions thereof);

*Category II*: "all conversations in which John Mitchell was a participant" (6 conversations or parts thereof);

*Category III*: "all conversations in which reference was made either to the Attorney General or to Mr. Mitchell by name" (17 conversations or parts thereof);

*Category IV*: none of the above (133 conversations or parts thereof).[20] Each of four sheets identified a single category by number (I–IV) and contents (approximately as described in the quotations immediately above), and listed by number the conversations, or portions of conversations, that had been assigned to that category. The cover pages for categories I through III were followed by photocopies of the relevant transcript pages. For instance, the cover page for Category I, which identifies by number all "Category I" conversations, is followed by transcript pages for conversation number 3, the first of the Category I

month after appellant's *Vaughn* index was submitted to the District Court. The revisions were made by the Archivist for the purpose of correcting certain inaccuracies in transcription. The Revised Transcripts appear to differ from the original only in that certain transcribed conversations have been split into two separate conversations, some previously unknown participants have since been identified, and one conversation has been added. Otherwise, the two transcripts appear to be substantially the same, and our ruling as to the inadequacy of the *Vaughn* index is equally applicable to both. On remand, appellant will have an opportunity to submit a *Vaughn* index based upon the Revised Transcripts. *See* notes 35–40 and accompanying text *infra*.

| | SCOPE OF OBJECTION | |
| --- | --- | --- |
| OBJECTION | ENTIRE TRANSCRIPT | PORTIONS OF TRANSCRIPTS ONLY |
| *Irrelevant* | 5 | |
| *Irrelevant* and *Privacy* | 7 | |
| *Irrelevant* and *Presidential Privilege* | 23 | 2 |
| *Irrelevant, Privacy,* and *Presidential Privilege* | 82 | 13 |
| *No Objections* | 1 | 15 |

**19.** Mr. Nixon's objections may be described in tabular form as follows:

**20.** *See* Appellant's Motion for Stay Pending Appeal at 7.

conversations, with non–Category I portions masked out. Mr. Nixon voluntarily waived all objections to Category I conversations (or fragments) and apparently turned over redacted photocopies to plaintiff's counsel.

Finally, Mr. Nixon submitted a memorandum that purports to "explain to the Court and counsel the structure of the *Vaughn* –type index and present[s] a legal analysis of the bases for the asserted objections to production of the conversations not being voluntarily disclosed."[21]

The District Court ruled, in a memorandum and order dated January 22, 1980, that Mr. Nixon's *Vaughn* submissions were insufficient and ordered "that all conversations transcribed by the Administrator in response to the subpoena and this court's November 8, 1978, order be made available immediately to attorneys for plaintiffs." The court held that Mr. Nixon's *Vaughn* index "is obviously not responsive to the Court of Appeals decisions in *Nixon, supra,* and *Dellums, supra,* and to this court's November 8, 1978 memorandum opinion for four reasons": First, Mr. Nixon provided a summary of all 759 pages of transcription, rather than providing manageable segments of the tape transcripts for which he claims privilege. Second, the descriptions themselves are not specific enough to identify the basis of the particular claim or claims being asserted. Third, even if the descriptions are specific enough, the blanket claim of one or more privileges is not correlated to any particular segment of conversations. "Unless Mr. Nixon would have the court understand that every segment of each conversation is objectionable on every ground . . . stated on each one–page summary, the privilege claims are woefully inadequate."[22] Finally, blanket claims of

"privacy" or "Presidential privilege" are not sufficiently particularized to describe the precise aspect of the privilege or interest that would be threatened by release of the transcripts.

In addition, the District Court rejected Mr. Nixon's claims of irrelevancy out of hand. It stated, "Since the court has already ruled that any material responsive to the subpoena should be turned over to the plaintiffs absent a valid claim of privilege by Mr. Nixon, November 8, 1978, memorandum opinion, unless Mr. Nixon is questioning the Administrator's fulfillment of the subpoena his objection to the material on the ground of irrelevance is immaterial."[23]

Mr. Nixon now appeals from the District Court's ruling and production order.[24] He challenges both the conclusion that his "*Vaughn* index" is insufficient as a matter of law and the holding that he is foreclosed on the basis of our earlier opinion in this case from objecting to the production of certain transcripts on grounds of relevancy. In addition, Mr. Nixon argues that, even if his submission fails to satisfy the requirements established by our opinion and by the District Court in its November 8, 1978, order, the District Court erred in not giving him another opportunity to satisfy those requirements by submitting an adequate index.

### III.

 As we noted at the outset of this opinion, we find ourselves in substantial agreement with the District Court's rejection of Mr. Nixon's index. The claims and objections based upon the Presidential privilege and upon privacy, however, are entitled to a considerable measure of deference by the courts. *United States v. Nixon,* 418 U.S. 683, 715, 94 S.Ct. 3090, 3111, 41 L.Ed.2d

---

**21.** *See* C.A. 2271–71, January 22, 1980, Memo.Op. at 3-4, *reproduced at* Appellant's Brief, Appendix B, at 25–26.

**22.** C.A. 2271–71, Jan. 8, 1980, Memo.Op. at 4, *reproduced at* Appellant's Brief, Appendix B, at 26.

**23.** C.A. 2271, Jan. 8, 1980, Memo.Op. at 3 n.2, *reproduced at* Appellant's Brief, Appendix B, at 25.

**24.** At the time he filed his notice of appeal, Mr. Nixon also moved for a stay of the District Court's production order pending appeal. We granted the stay motion on February 1, 1980.

1039 (1974); *Dellums v. Powell*, 561 F.2d 242, 249, 250 (D.C.Cir.1977). Thus, we conclude that the District Court should have afforded Mr. Nixon one more opportunity to submit a satisfactory index, rather than to ignore his objections and order the immediate release of all of the transcripts to appellees' counsel. In this Part of our opinion, we highlight the specific shortcomings in the index submitted below that should be remedied by Mr. Nixon on remand. In Part IV, we explain why we conclude that the District Court erred in disallowing Mr. Nixon's relevancy–related objections.

In *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), this court "set out suggested procedures to allow the courts to determine the validity of the government's claims [that certain documents were exempted under Freedom of Information Act from the duty of disclosure] without physically examining each document." [25] Our analysis in that case of the problems created by undifferentiated, blanket claims of multiple exemptions stands as a blueprint of how an index should not be constructed, and comes quite close to describing precisely the dilemma posed to the District Court by Mr. Nixon's index in this case:

> The Government claims that the documents, as a whole, are exempt under three distinct exemptions. From the record, we do not and cannot know whether a particular portion is, for example, allegedly exempt because it constitutes an unwarranted invasion of a person's privacy or because it is related solely to the internal rules and practices of an agency. While it is not impossible, it seems highly unlikely that a particular element of the information sought would be exempt under both exemptions. Even if isolated portions of the document are exempt under more than one exemption, it is preposterous to contend that all of the information is equally exempt under all of the alleged exemptions. It seems probable that some portions may fit under one

exemption, while other segments fall under another, while still other segments are not exempt at all and should be disclosed. The itemization and indexing that we herein require should reflect this.

484 F.2d at 827–28.

We have recently indicated the bare minimum requirements of any acceptable *Vaughn* index:

> (1) The index should be contained in one document, complete in itself.

> (2) The index must adequately describe each withheld document or deletion from a released document.

> (3) The index must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant. . . .

*Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C.Cir.1979). And in another recent case we upheld the District Court's rejection of a *Vaughn* index that was depressingly similar to the one submitted by Mr. Nixon in this case:

> We repeat, once again, that conclusory assertions of privilege, will not suffice to carry the Government's burden of proof in defending FOIA cases. A typical line from the index supplied in this case identifies who wrote the memorandum, to whom it was addressed, its date, and a brief description of the memorandum such as "Advice on audit of reseller whether product costs can include imported freight charges, discounts, or rental fees. Sections 212.93 and 212.92." DOE claimed this document was "PD" (predecisional), "ATWP" (attorney work–product) and that "some" of it was in an investigatory file. That is all we are told, save for the affidavits submitted by the regional counsel which repeat in conclusory terms that all the documents withheld fall within one or another of the exemptions.

*Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 861 (D.C.Cir.1980).

With these cases as background, we turn to a point–by–point review of the District

---

**25.** *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 861 (D.C.Cir.1980).

Court's rejection of Mr. Nixon's index. We do this so that appellant's counsel will have the clearest possible understanding of what is expected of them on their second attempt to satisfy our earlier order.

We agree with the District Court that Mr. Nixon has failed to "present [ ] managable segments of the tape transcripts to which he claims privilege." [26] As noted earlier in our opinion, Mr. Nixon has voluntarily released portions of twenty–three conversations, leading to the conclusion that he does not claim that their release is barred by any claim, defense, or privilege. Yet his index summarizes each of these twenty–three conversations and lists his objections to their production. As a first step in preparing any *Vaughn* index, the party on whom the burden of production rests should provide a clear and cogent summary of exactly what material is being withheld (or, in this case, of exactly what material is subject to his claim, defense, or privilege), and what material is being produced without objection.[27] In addition, at least for purposes of correlating claims, defenses, and privileges to manageable segments of the transcripts, counsel should identify all relevant portions of the transcripts by page number and line, so that all claims and objections can be fully evaluated and reviewed.

The requirement that the material be presented in manageable segments takes on added meaning and importance when it is remembered that the underlying purpose of the *Vaughn* index is to permit the District Court to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves, as well as to produce a record that will render the District Court's decision capable of meaningful review on appeal.[28] Thus, each document must be broken down into manageable segments that are cross–referenced to the relevant claim, defense, or privilege. The work is undoubtedly painstaking and time–consuming, but it must be done if a District Court is to analyze claims that apply to most of 759 pages of conversation transcripts.

Mr. Nixon's summaries consist of a summary sheet that identifies the date, time, and place of the conversation, names the participants, and provides brief one–line synopses of each topic touched upon in the conversation. Many describe a dozen or more conversations. At the bottom of each summary sheet, Mr. Nixon lists his objections to the production of that conversation. In fifteen instances, his objections are expressly limited to certain portions of the conversation, and in one instance he lists no objection at all to the production of a transcript in its entirety. In 117 instances, however, he simply lists one, two, or three objections at the bottom of the summary. As noted earlier, 82 summaries list all three objections without delineating the precise applicability of the objections to discrete topics discussed by the participants. In addition, Mr. Nixon categorized the conversations according to their perceived relevance to the subpoena. This, in our view, adds nothing to the index except an unneeded element of confusion.[29]

26. C.A. 2271–71, Jan. 22, 1980, Memo. Op. at 3, *reproduced at* Appellant's Brief, Appendix B, at 25.

27. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C.Cir.1973) ("In a large document it is vital that the agency specify in detail which portions of the document are disclosable and which are allegedly exempt.").

28. *Coastal States Gas Corp. v. Department of Energy, supra*, 617 F.2d at 861; *Vaughn v. Rosen, supra*, 484 F.2d at 827–28.

29. The classification of the conversations into Category I, II, III, or IV is merely an exercise in the jurisprudence of labels. It offers concluso-ry assertions regarding many conversations that are not susceptible to such simplistic classification. Worse, in at least one instance the categories have omitted a conversation in its entirety. While we express no opinion as to the materiality or importance of this omission, we are led to the conclusion that the effort to categorize the conversations is both inappropriate in this case, because of the unsuitability of the materials for such classification, and potentially misleading, due to the possibility, realized in at least one instance in this index, that *some conversations may be left out of the* categorization process altogether. The dangers

Without an itemized explanation of each segment sought to be protected, the District Court is left with the unavoidable impression that nearly every segment is objectionable on every ground. To paraphrase our opinion in *Vaughn v. Rosen, supra*,[30] it is preposterous to contend that all of the conversations are equally privileged under all of the alleged privileges. If this claim were taken at face value, we would have to conclude that Mr. Nixon actually claims that the Presidential privilege prevents the disclosure of a conversation with Mr. Nixon's secretary concerning Democratic Party fund–raising dinners or of a meeting with a score of Congressmen, Senators, and aides concerning the cost of living. If this is Mr. Nixon's claim, it should be made much more explicitly and the theory behind such a claim should also be made clear. The need for "a relatively detailed justification, specifically identifying the reasons why a particular exemption [or, in this case, privilege] is relevant and correlating those claims with the particular part of a withheld docu-

ment to which they apply"[31] has not yet been satisfied in this case.

The District Court also stated that it did not believe that the summaries of conversations that form the backbone of the *Vaughn* index contain " 'descriptions [of the conversations] specific enough to identify the basis of the particular claim or claims.' "[32] We agree with this assessment. Many of the one–line summaries consist of nothing more than a noun phrase that is so brief and cryptic as to be unintelligible. While this court has consistently stated that counsel need not prepare so complete a summary that the summary itself reveals that which is being withheld,[33] a more detailed summary is required than that which Mr. Nixon's counsel have provided in this case.

The District Court also ruled that Mr. Nixon has not made clear the basis for his claim that either the Presidential privilege or his right to privacy would be violated by the release of any of the conversations.[34]

inherent in such a process far outweigh any possible advantage the use of these categories may offer.

To the extent that the same objections or claims of privilege apply to a large number of passages in the transcripts, some system of categorization will be useful, if not indispensable, in summarizing and correlating the passages with the claims or objections. But the passages should be identified by transcript page and line, and the objections and claims should be made with greater specificity and particularity than appellant has managed to date. Moreover, extreme care should be taken to ensure that all conversations are included in any such summary.

30. 484 F.2d at 827–28.

31. *Mead Data Central, Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 251 (D.C.Cir. 1977).

32. C.A. 2271–71, Jan. 22, 1980, Memo. Op. at 4, *reproduced at* Appellant's Brief, Appendix B, at 26.

33. *See Founding Church of Scientology, supra*, 603 F.2d at 949; *Vaughn v. Rosen, supra*, 484 F.2d at 826–27.

34. The District Court's memorandum opinion states in relevant part as follows:

Finally, the *Nixon* and *Sirica* opinions and this court's opinion envisioned a claim of

privilege by Mr. Nixon that entails more than the term "presidential privilege" appended to a summary. When the Court of Appeals rejected then President Nixon's blanket claim of privilege for his White House tapes they noted that in the procedures they outlined for screening transcripts before a court releases them "the President will have an opportunity to present more particular claims of privilege . . ." *Nixon, supra* at 721. In the present case Mr. Nixon has made no such particularized claim of privilege. For example, in claiming that release of conversation No. 1 (presumably all of it) violates his presidential privilege and his right to privacy Mr. Nixon has not described the precise aspect of the presidential privilege and/or his right to privacy that would be violated by release of conversation No. 1.

Mr. Nixon's present claim of privilege amounts to a blanket statement that almost every conversation is privileged in all respects on all grounds. This contention was rejected by the circuit court in *Nixon* and *Dellums* and by this court in its November 8, 1978 memorandum opinion, and nothing has happened in the interim which justifies a different ruling.

C.A. 2271–71, Jan. 22, 1980, Memo. Op. at 4–5, *reproduced at* Appellant's Brief, Appendix B, at 26–27.

For the reasons that follow, we think the District Court correctly held that the showing required of Mr. Nixon at this stage of the proceedings is a more particularized showing than that which was made below.

In *Nixon v. Sirica*, 487 F.2d 700 (D.C.Cir. 1973), Mr. Nixon challenged the District Court's order to produce certain items identified in a subpoena *duces tecum* so that the court could determine, by means of an *in camera* inspection, whether the items were exempted from disclosure by evidentiary privilege. *Id.* at 705. One of Mr. Nixon's arguments against the validity of the District Court's order was "that Executive privilege is absolute with respect to presidential communications, so that disclosure is at the sole discretion of the President." *Id.* at 708. After rejecting the contention that the President's privilege is absolute, we addressed the conflict between a less-than-absolute Presidential privilege and the evidentiary needs of a particular case:

> [A]pplication of Executive privilege depends on a weighing of the public interest protected by the privilege against the public interests that would be served by disclosure in a particular case. . . . [T]he President asserts that the tapes should be deemed privileged because of the great public interest in maintaining the confidentiality of conversations that take place in the President's performance of his official duties. . . .
>
> [W]e think that this presumption of privilege premised on the public interest in confidentiality must fail in the face of the uniquely powerful showing made by the Special Prosecutor in this case. . . . [T]he Special Prosecutor has made a strong showing that the subpoenaed tapes contain evidence . . . for which no effective substitute is available.

*Id.* at 716–17 (footnote omitted). After finding that the Special Prosecutor's showing of need outweighed the President's assertion of a generalized interest in the confidentiality of Presidential conversations, we turned to the procedures and standards to be employed by the District Court in determining which materials would in fact be turned over to the grand jury:

> [W]e hold that the District Court may order disclosure of all portions of the tapes relevant to matters within the proper scope of the grand jury's investigation, *unless the Court judges that the public interest served by nondisclosure of particular statements of information outweighs the need for that information demonstrated by the grand jury.*

*Id.* at 718 (emphasis added). We continued:

> We contemplate a procedure in the District Court, following the issuance of our mandate, that follows the path delineated in *Reynolds, Mink,* and by this court in *Vaughn v. Rosen. With rejection of his all–embracing claim of prerogative, the President will have an opportunity to present more particular claims of privilege, if accompanied by an analysis in manageable segments.*

*Id.* at 721 (emphasis added) (footnote omitted).

Thereafter, we considered the obviously analogous case presented by Mr. Nixon's first appeal in the instant case, in which he challenged the subpoena *duces tecum* on the ground, among others, "that the [presidential] privilege must be absolute when asserted in civil litigation," *Dellums v. Powell,* 561 F.2d 242, 245 (D.C.Cir.), *cert. denied,* 434 U.S. 880, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977). We reached the same conclusion in this earlier *Dellums* opinion as we had reached in *Nixon v. Sirica.* The privilege is not an absolute evidentiary privilege, and it may be overcome by a sufficiently strong showing of litigating need; moreover, the parties seeking discovery in this case had overcome the presumptive privilege by a particularly strong showing of litigating need. *Id.* at 248. We continued:

> Concededly, plaintiffs–appellees have not established with absolute certainty that conversations concerning the demonstrations actually took place between Mr. Nixon and those with whom he consulted during the time frame embraced by the subpoena. It is enough for present purposes that it is highly likely that such conversations did take place and were

recorded, and there is a substantial possibility that Mr. Nixon discussed the matter with Mr. Mitchell, who was both his attorney general and a person who enjoyed a close working relationship with the President. *Only if such conversations do exist, will plaintiffs have access to any record. If they do not exist, the assumed privilege will remain intact and there will be no public disclosure. . . .*

*Id.* at 248–49. We also considered the evidentiary privilege based upon Mr. Nixon's privacy interest and concluded that "the privacy interests of a former President must be safeguarded," *id.* at 250. As for the conduct of proceedings in the District Court on remand, we wrote:

Under such circumstances, we contemplate a procedure in the District Court identical to that outlined in this court's en banc opinion in *Nixon v. Sirica, supra,* 159 U.S.App.D.C. at 79, 487 F.2d at 721. While the parties are directed to that order, we think it sufficient to indicate that the procedure there developed contemplates *in camera* review of the challenged material *at which time Mr. Nixon will be able to assert any claims of privilege with particularity. . . .*

*Id.* at 251 (emphasis added).

■ We think it abundantly clear from the preceding passages that any claim of privilege, whether of executive or Presidential privilege or of common–law evidentiary privilege based upon Mr. Nixon's privacy interests, must be made with particularity. Only if Mr. Nixon can show that the interest in secrecy or nondisclosure outweighs the need for a particular transcript should that transcript be withheld from appellees' counsel. Instead, Mr. Nixon has in effect reasserted an absolute Presidential privilege and made no attempt to balance the competing interests, as our opinions require. Under the circumstances, the District Court correctly rejected the blanket assertion of privilege as an attempt to relitigate the issue of absolute privilege that Mr. Nixon has lost twice before in this court.

The memorandum that Mr. Nixon submitted along with his transcript summaries and his categorizations fails to state the basis, even on a generalized level of abstraction, for his assertions that the transcripts should be withheld on grounds of Presidential privilege, privacy, and relevancy. Indeed, the memorandum is little more than a vehicle for the presentation of self–serving quotations from the transcript designed to show the former President's lack of involvement with the law enforcement activities on May 5, 1971. It need hardly be said that such selections from the transcripts are largely irrelevant to the purpose to be served by a *Vaughn* index and, to the extent that this memorandum purports to justify the claimed privilege, it is wholly inadequate.

### IV.

■ The District Court rejected the index in this case based upon its view, in which we concur, that the index utterly failed to present Mr. Nixon's claims as to Presidential privilege and privacy in a manner contemplated by our earlier opinions and conducive to analysis and review. The District Court, however, erroneously failed to consider Mr. Nixon's objections on grounds of relevancy. It wrote:

Since the court has already ruled that any material responsive to the subpoena should be turned over to the plaintiffs absent a valid claim of privilege by Mr. Nixon, November 8, 1978 memorandum opinion, unless Mr. Nixon is questioning the Administrator's fulfillment of the subpoena his objection to the material on the ground of irrelevance is immaterial.[35]

While the District Court's refusal to consider such claims had no effect on the outcome below, we wish to make it clear that on remand from this court Mr. Nixon should be given the opportunity to present with particularity his relevancy–based objections to production. In our prior opinion,

**35.** C.A. 2271–71. Memo. Op., Jan. 8, 1980, at 3 n.2, *reproduced at* Appellant's Brief, Appendix B, at 25.

we stated, "Following transmittal of relevant materials to the Court, and before they are turned over to counsel for plaintiffs, Mr. Nixon shall be afforded the right to assert 'any rights, defenses or privileges'–whatever they might be ...." 561 F.2d at 250. As our earlier discussion of the Presidential privilege should make clear, the weighing process is designed to balance the particular interest in confidentiality against the specific need for a given transcript, and the relevancy of a transcribed conversation will be an important consideration in any such balancing process. In addition, the District Court's November 8 order, in which it established the screening guidelines to be used by the archivist in identifying conversations that are covered by the subpoena, significantly expanded upon the scope of the subpoena language, establishing standards that would err, if at all, on the side of over–inclusion. The District Court stated that "[a]ny doubts may be resolved in favor of inclusion," [36] and added that "Mr. Nixon will have just and ample opportunities at the administrative appeal, *in camera* review, and appellate appeal stages of this process to raise objections based upon relevance and other privileges." [37] Thus, Mr. Nixon properly raised objections based upon relevancy in his *Vaughn* index, although in a totally inadequate manner, and relevancy–based objections should be considered on remand by the District Court if they are particularized and supported by analysis that relates to manageable segments of the transcripts.

In view of our holding in the earlier *Dellums* case, in which we upheld the subpoena *duces tecum* upon appellees' " 'preliminary showing of necessity' for information that is not merely 'demonstrably relevant,' but indeed substantially material to their case," [38] transcripts of conversations produced by the archivist in response to the subpoena are presumptively relevant and material. This presumption obtains even though the District Court (properly, in our view) expanded upon the language of the subpoena in framing search instructions for the archivist. Thus, the burden of persuasion is on Mr. Nixon to demonstrate that particular transcripts are not relevant and should not be produced. The standard to be applied by the District Court in ruling on Mr. Nixon's relevancy objections should be the relevancy standard ordinarily applied to discovery, rather than the admissibility standard.[39] This is not to say, of course, that all transcripts that meet this threshold standard must be turned over to appellees' counsel, because Mr. Nixon must be given an opportunity to present his particularized claims of Presidential privilege. But unless he can demonstrate that the interests that are promoted by the privilege outweigh those that favor discovery in this class action, appellees' counsel shall be entitled to obtain the transcripts, subject to an appropriate order.[40]

For the reasons stated above, the memorandum and order of the District Court are affirmed in part, reversed in part, and remanded for modification and further proceedings consistent with this opinion.

*It is so ordered.*

Concurring opinion of Circuit Judge EDWARDS: Because I agree that the District Court "erroneously failed to consider Mr. Nixon's objections on grounds of relevancy," I concur in the thoughtful and exhaustive opinion by Judge McGowan. However, since I remain troubled by certain aspects of this case, I am constrained to add this short concurring statement.

---

**36.** C.A. 2271–71, Nov. 8, 1978, Memo. Op. at 11, *reproduced at* Appellant's Brief, Appendix B, at 43.

**37.** *Id.* at 12, *reproduced at* Appellant's Brief, Appendix B, at 44.

**38.** *Dellums v. Powell, supra,* 561 F.2d at 249 (footnotes omitted), *quoting Smith v. Schlesinger,* 513 F.2d 462, 477 & n.52 (D.C.Cir.1975),

*and United States v. Nixon,* 418 U.S. 683, 712, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974).

**39.** *See, e. g., Freeman v. Seligson,* 405 F.2d 1326, 1335 (D.C.Cir.1968); 5A J. Moore, Moore's Federal Practice ' 45.05[1], at 45–29 to –30 (2d ed. 1977).

**40.** *See Dellums v. Powell, supra,* 561 F.2d at 249.

It is clear from the record that Mr. Nixon was fully and adequately advised by the earlier opinions of this court as to the need for *particularized* objections in his *Vaughn* index. Yet, Mr. Nixon submitted a *Vaughn* index that the court here finds to be overly generalized, self–serving and "totally inadequate." As the opinion by Judge McGowan properly suggests, portions of the *Vaughn* index submitted by Nr. Nixon reflected nothing more than "an exercise in the jurisprudence of labels." The opinion for the court also indicates that "the District Court correctly rejected the blanket assertion of privilege [made by Mr. Nixon] *as an attempt to relitigate the issue of absolute privilege that Mr. Nixon has lost twice before in this court*" (emphasis added). In light of these findings, I am not convinced that the District Court should have given Mr. Nixon a second chance to prepare an acceptable *Vaughn* index.

Nevertheless, since I fully agree with the court's ruling on the question dealing with the relevancy objections, I agree that the case must be remanded for further proceedings. However, I would note, for the sake of emphasis, that Judge McGowan's opinion is highly instructive and perfectly clear with respect to what is required in a *Vaughn* index. If Mr. Nixon was somehow confused by the earlier opinions of this court as to the need for *particularized* objections, no such excuse will suffice hereafter. Therefore, we can at least be sure that there will be no recurrence of one of the problems that has been faced here.