## COASTAL STATES GAS CORPORATION,

v.

## DEPARTMENT OF ENERGY, Appellant.

### No. 80–2199.

United States Court of Appeals, Third Circuit.

Argued Dec. 4, 1980.

Decided March 19, 1981.

Rehearing and Rehearing In Bank Denied April 14, 1981.

---

Alice Daniel, Asst. Atty. Gen., Washington, D. C., James W. Garvin, Jr., U. S. Atty., Wilmington, Del., William Kanter, Marc Johnston (argued), Attys., Civ. Div., U. S. Dept. of Justice, Washington, D. C., for appellant.

Rene P. Lavenant, Jr., J. Todd Shields (argued), Charles S. Patterson, Jr., Fulbright & Jaworski, Houston, Tex., William O. LaMotte, III, Morris, Nichols, Arsht & Tunnel, Wilmington, Del., for appellee.

Before ADAMS, GARTH and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal presents two interrelated questions dealing with the role of a district court in passing on requests for information submitted under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B) (FOIA). First, did the district court abuse its discretion in refusing to consider a revised index and affidavit, submitted by the government—immediately prior to the hearing on the plaintiff's "motion for partial judgment"—to explain the claimed exemptions? Second, did the district court err in ordering a government agency to produce forthwith all documents for which claims of exemp-tion were not adequately supported by the initial index provided to justify the withholding? Because we conclude, in the circumstances here, that the district court abused its discretion in rejecting the revised index and erred in ordering immediate disclosure of the documents, we vacate the order of the district court and remand.

### I.

In October, 1978, plaintiff Coastal States Gas Corp. (Coastal) transmitted a FOIA request to defendant Department of Energy (DOE).[1] Coastal sought agency records pertaining to (1) the formulation, adoption, interpretation and territorial application by DOE of certain petroleum price and allocation regulations; (2) regulations concerning an exemption from the petroleum price charged for the "first sale into U.S. Commerce" of imports; and (3) enforcement activity by DOE against firms alleged to have violated regulations because of participation in a "foreign transaction." Coastal candidly admitted that the records sought were directly related to questions raised by a Proposed Remedial Order[2] issued by DOE to Coastal on September 6, 1978.

DOE did not comply with the ten day period provided in the statute for an agency response to a FOIA request, 5 U.S.C. § 552(a)(6)(A); instead, it answered Coastal with two letters granting itself extensions of time. Having exhausted its administrative remedies,[3] Coastal initiated a FOIA suit in the district court, in April 1979, pursuant to § 552(a)(4)(B).[4] Coastal simul-

---

1. The defendant DOE has three predecessor agencies: the Cost of Living Council (August 1973–December 1973); the Federal Energy Office (December 1973–August 1974); and the Federal Energy Administration (August 1974–October 1977). For convenience, we refer to the defendant simply as DOE, though some of the documents involved were generated by these previous agencies.

2. A Proposed Remedial Order was issued by DOE's Office of Special Counsel to initiate enforcement proceedings before the DOE Office of Hearings and Appeals. These administrative proceedings are still pending. Case No. DRO–0113.

3. Under 5 U.S.C. § 552(a)(6)(C) (1976) such remedies are deemed to have been exhausted if the agency does not release the identifiable documents within 30 days of the request. *See Founding Church of Scientology, Etc. v. Bell,* 603 F.2d 945, 946 n.3 (D.C.Cir.1979).

4. § 552(a)(4)(B) provides:
    On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a

taneously filed a motion to compel preparation by DOE of a *Vaughn* index covering all documents that DOE asserted to be exempt from disclosure under FOIA. A *Vaughn* index is a procedural tool developed in *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), to enable a district court to evaluate allegations of exemption advanced by a governmental agency, and to assure that claimed exemptions are justified under the Act. The contemplated indexing system would subdivide requested documents into manageable sections and cross-reference relevant portions to the various justifications for nondisclosure asserted by the government. An adequate *Vaughn* index would thus narrow the scope of the court's inquiry, contribute to informed court evaluation of disputed documents, aid appellate review, and enhance an opposing party's ability to argue effectively against nondisclosure.

Under the FOIA statute, which embodies a policy of expedited handling of requests for documents, a government agency has thirty days to answer a FOIA complaint and motion, rather than the sixty day period usually accorded the government. 5 U.S.C. § 552(a)(4)(C). After a court conference, the parties entered into a stipulation, which was approved by an order dated May 9, 1979, setting June 15, 1979 as the production date for the non-exempt documents and June 22 as the filing date for the *Vaughn* index of withheld documents. The order approving the stipulation contained a provision carefully detailing the information which the government was required to set forth in the index so as to justify nondisclosure.[5] At DOE's request the deadline for filing the *Vaughn* index was extended to July 2, 1979. Pursuant to the May 9 order, DOE collected and reviewed over 800 documents; 500 were immediately released and approximately 200, withheld in whole or in part, are in issue here.[6]

Following DOE's filing of the *Vaughn* index together with counsel's affidavit, which described the withheld documents, Coastal sought discovery from DOE concerning the method employed to prepare the index. DOE responded with a motion for a protective order to limit discovery to interrogatories. It also represented that it would file an affidavit with the court the next day, supplying additional information regarding the documents being withheld and theoretically mooting the need for discovery. In addition DOE stated that it intended to move for summary judgment by August 17, 1979. The district court denied DOE's application for a protective order, and explained that it would not rule on a summary judgment motion in a FOIA case if the plaintiff had not been afforded an opportunity to examine the scope and adequacy of the agency's document search

case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

5. The order required the agency to specify:

  (a) The author(s), to the extent indicated in the document;
  (b) The date the document was prepared, to the extent indicated in the document;
  (c) The addressee(s), to the extent indicated in the document;
  (d) The additional person or persons to whom the document was circulated and/or made available, to the extent indicated in the document;
  (e) The subject matter;

  (f) The regulation(s) expressly addressed or referred to either by number or by description (for example, "first sale exemption"), to the extent indicated in the document;
  (g) The specific exemption(s) claimed to justify withholding each document, correlated specifically to the document or the segregable portion thereof claimed to be exempted from mandatory disclosure (with an explanation as to why exempt material could not be segregated from each document);
  (h) A detailed justification of the basis for each claim of exemption;
  (i) The specific injury to DOE which release of the document allegedly would create; and
  (j) Why the public interest does not favor disclosure of the document.

6. The remaining documents, mostly withheld under 5 U.S.C. § 552(b)(4), the FOIA trade secret exemption, were not challenged by Coastal in the motion before the district court.

and to discover what documents are in existence.[7]

Although DOE never filed the motion for summary judgment as it had promised, discovery nonetheless ensued. Then, on December 7, 1979, Coastal filed a "motion for partial judgment," requesting production of all documents listed in the July 2, 1979 index[8] and a compilation of a new, adequate *Vaughn* index covering any documents not ordered disclosed. Coastal failed to denominate with any particularity what type of proceeding was sought, but requested an expedited hearing. In doing so, it invoked the docket priority directive of § 552(a)(4)(D).[9] Oral argument was set for February 28, 1980. The day before the hearing, DOE filed with the court a revised 400–page *Vaughn* index and an accompanying affidavit—the revised index and affidavit that it had promised in its January 11, 1980 answering brief. Coastal immediately countered with a motion to strike the revised index and affidavit on the ground they were untimely filed.

The district court granted the plaintiff's motion to strike the revised index, maintaining that to permit DOE "to rely upon its latest eleventh-hour effort to delay these proceedings would make a mockery of the legislation."[10] The district judge reasoned that DOE's long-standing knowledge of the *Vaughn* index requirement, the acknowledged importance of such indices in the effective enforcement of the FOIA, and the congressional policy favoring expeditious handling of FOIA cases militated against allowing the agency to revise and correct its index until it "got it right." Next, the court found that DOE's initial July 2 index did not comply with the order of May 9 requiring a particularized justification for any refusal to release a document. The inadequacy of the document index, the district judge declared, created four problems: the court was incapable of determining whether the documents were in fact exempt; Coastal was unable to argue with desirable legal precision that specific records were not exempt;[11] *in camera* review, on the basis of such minimal information would be unfair to Coastal and extremely burdensome and unproductive for the court; and meaningful appellate review would be difficult.[12] Thus, the deficient index also provided the basis for the district court's rejection of *in camera* review as a viable alternative for determining possible exemptions.

Nevertheless, the judge specifically rejected the plaintiff's argument that the failure by DOE to comply with the May 9 Order merited the sanction of partial judgment as a matter of discovery law. Rather, in holding that partial judgment ordering production without consideration of the revised index was an appropriate remedy, the district court relied on what it characterized as "the provisions and policies of the FOIA," "the well-established purpose for requiring the filing of an adequate *Vaughn* index," and on the trial court's "inherent power to control the proceedings before it."[13] After the district judge denied DOE's motion for reconsideration of the order, the agency sought a stay from this Court pending appeal. Finding that the "partial judgment" granted by the district

---

7. II Joint Appendix 310–11 [hereinafter J.A.].

8. This motion for partial judgment excepted documents for which a § 552(b)(4) claim had been asserted, and explains why Coastal styled its motion as one for "partial judgment."

9. § 552(a)(4)(D) prescribes:

Except as to cases the court considers of greater importance, proceedings before the district court, as authorized by this subsection, and appeals therefrom, take precedence on the docket over all cases and shall be assigned for hearing and trial or for argument at the earliest practicable date and expedited in every way.

10. I J.A. 133.

11. See *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973) *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

12. See *Ray v. Turner*, 587 F.2d 1187, 1214 n.56 (D.C.Cir.1978) (Wright, C. J., concurring); *Mead Data Central, Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 250 n.10 (D.C.Cir.1977).

13. I J.A. 136–37.

court achieved the plaintiff's very objective—to compel production of documents—and that compliance with the order would effectively moot DOE's claim that the documents are in fact exempt, a stay was granted.

## II.

First, we hold that this Court has jurisdiction pursuant to § 1292(a)(1), on the ground that this appeal was from an interlocutory order granting injunctive relief.[14] Because the order to produce in and of itself grants full relief to the FOIA requester, this is a quintessential case of an interlocutory order with "serious, perhaps irreparable, consequence," and which can be "effectually challenged" only by immediate appeal.[15]

## III.

The procedural history of this matter has been related in some detail because it is critical to a proper disposition of the immediate controversy. As is now well-known, FOIA was enacted in furtherance of the belief that "an informed electorate is vital to the proper operation of a democracy."[16] The Act's central provision instructs agencies, upon request, to release promptly responsive records in their possession,[17] subject to nine specific exemptions.[18] Moreover, the FOIA places the burden of proof on the agencies to establish and sustain their claims of exemption.[19] Unfortunately, requests under the Act have produced almost as much advice from courts about how the FOIA ought to operate as they have generated information from agencies about how the government actually operates.

The Supreme Court, in adjudicating FOIA suits, has recently evolved a tripartite test to determine whether a district court has authority to order the production of documents pursuant to 5 U.S.C. § 552(a)(4)(B). The judicial remedy is properly invoked if:

(1) the requested documents are agency records

(2) the records have been withheld by the agency and

(3) the withholding was improper.

See *Forsham v. Harris*, 445 U.S. 169, 177, 100 S.Ct. 978, 983, 63 L.Ed.2d 293 (1980); *Kissinger v. Reporters Comm.*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980).

Because the regulations and interpretations promulgated by DOE and sought by Coastal are clearly agency records,[20] and because these documents, within the agency's control, are admittedly being withheld,[21] our inquiry focuses on whether the

---

**14.** Excepting all § 552(b)(4) documents from this order does not alter this holding. *See Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.*, 484 F.2d 1037 (3d Cir. 1973) (Fed.R.Civ.P. 54(b) does not affect the appealability of orders granting injunctions).

**15.** *See Carson v. American Brands, Inc.*, —— U.S. ——, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). Although Coastal argues that the district court's mandate is a discovery order, we agree with the Supreme Court's construction of the FOIA that "[u]nlike discovery contests, where rulings are generally not appealable until the conclusion of the proceedings, an agency's denial of a FOIA request is immediately reviewable in the district court, and the district court's decision can then be reviewed in the court of appeals." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 238, 98 S.Ct. 2311, 2325, 57 L.Ed.2d 159 (1978). The same logic applies to the district court's granting of a FOIA request here.

**16.** S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965), *reprinted in* Freedom of Information Act Source Book: Legislative Materials, Cases, Articles 38 (Comm. Print 1974) [hereinafter cited as Source Book].

**17.** 5 U.S.C. § 552(a)(3).

**18.** 5 U.S.C. § 552(b)(1)–(9).

**19.** 5 U.S.C. § 552(a)(4)(B).

**20.** *Cf. Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 978, 63 L.Ed.2d 293 (1980) (written data generated by privately controlled organization receiving federal grants from agency not "agency records" if not obtained by agency).

**21.** *Cf. Kissinger v. Reporters Comm.*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) (agency not "withholding" in violation of statute when it refuses to institute retrieval action of document not in its possession).

withholding was improper. While the questions whether a document is an agency record and whether it is being withheld are largely substantive ones, discerning whether the withholding is improper raises substantive as well as procedural issues. As a substantive matter, if the agency cannot sustain its burden of proof, because the actual contents of the records do not fall within one of the specified exemptions, withholding is not in order. From a procedural standpoint, agency delay in providing the court with sufficient information to determine if an exemption is justified, could amount to a failure to carry the statutory burden of proof and could also constitute improper withholding, given the policies of full and expeditious disclosure that are embodied in the Act.[22]

### A.

Coastal, apparently to guard against all contingencies, argues—in the alternative—that the district court's order can be rationalized as a default judgment, a summary judgment, a final judgment, or as an exercise of the court's inherent power to control its docket. The analysis advanced by Coastal, which is premised on the FOIA policy of prompt disclosure, implicitly intertwines procedure and substance. It contends that to interpret FOIA to require that "an agency can 'improperly withhold' agency records *only* if a district court affirmatively finds that records being with-

held are *not* exempt"[23] would emasculate the "make promptly available" language of the Act.[24] Rather, to effectuate fully the goals of FOIA, Coastal maintains that an improper withholding occurs if an agency, solely on the basis of conclusory allegations of exemption, retains records for time periods far beyond those prescribed in the Act,[25] and beyond any reasonable conception of promptness. The argument equates the agency's dilatoriness in proving the validity of an exemption with the agency's inability to carry its burden of proof on the merits of an exemption.

■ Originally, Coastal supported its "partial judgment motion" with a default theory: that the persistent failure of DOE to comply with the May 9 court order to produce a *Vaughn* index of sufficient evidentiary detail justified a default judgment for Coastal.[26] The district court, however, explicitly declined to rest its holding on a default judgment theory. Without in any way excusing DOE's failure to submit revised and complete information to the court, the district judge stated that he believed that partial judgment as a matter of discovery law—premised solely on noncompliance with a discovery order—was an inappropriate sanction.[27] Because there is no precedent for the draconian sanction of default subsequent to an initial noncompliance with a discovery order,[28] and because FOIA cases do not offer examples of dismissals based on a single failure to comply

---

22. *See* S.Rep. 813, 89th Cong., 1st Sess. (1965) *reprinted in* Source Book at 38 (FOIA represents philosophy of full disclosure of information unless specifically exempted); H.Rep. 1497, 89th Cong., 2d Sess. (1966), U.S.Code Cong. & Admin.News, 1966, p. 2418 *reprinted in* Source Book at 30 (*de novo* review and expedited court handling aimed against wrongful withholding, not at crowding court dockets).

23. Appellee's Brief at 22.

24. 5 U.S.C. § 552(a)(3).

25. 5 U.S.C. § 552(a)(6)(A) provides an agency with thirty days to respond, practically speaking: 10 days for the initial request and 20 days with respect to an appeal. 5 U.S.C. § 552(a)(6)(B) permits an agency a 10 day extension in "unusual circumstances."

26. *See* Brief in support of plaintiff's motion for partial judgment, I J.A. 71.

27. *See* Mem. Op. June 30, 1980 Granting Plaintiff's Partial Judgment Motion, I J.A. 137. Also in its later Mem. Op. Aug. 14, 1980, refusing defendant's motion to stay, the court reiterated that Rule 55 was not the ground for its ruling. I J.A. at 172.

28. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (failure to respond to court order for written interrogatories despite numerous admonitions and extensions justified dismissal of action on account of respondents' "flagrant bad faith").

with an order to produce a *Vaughn* index,[29] we are unable to say that the district judge erred in rejecting Coastal's default theory. In light of the district court's declination to enter a default judgment and Coastal's failure to specify what rule of civil procedure governed this action,[30] it is necessary for us to analyze the record carefully in order to ascertain precisely what the court did do, and whether it was permissible.

### B.

Although we in no way intend to condone DOE's lack of celerity in this proceeding, a comparison of the present case with *Coastal States Gas Corp. v. Dept. of Energy*,[31] helps to illuminate some of the problems present here. Coastal believes we are entitled to rely on the rationale of this recent case in which the District of Columbia Circuit upheld a district court order requiring DOE to produce all documents for which its claims of exemption were not adequately supported by a *Vaughn* index. In doing so, the District of Columbia Court stated "[a]t several points in the course of this opinion we will rely on a conclusion *not* that the documents are not exempt as a matter of law, but that the agency has failed to supply us with even the minimal information necessary to make a determination." 617 F.2d at

861. This premise, acceptable in the context of *Coastal I*, does not appear to be applicable when engrafted on the proceedings presently before us.

In *Coastal I*, where the matter came before the district court on cross-motions for summary judgment, DOE was fully informed of its procedural posture.[32] DOE had submitted a *Vaughn* index in July 1978 and had been ordered by the court half a year later to supplement the index, which it did. Thus, had the district court in the matter before us temporarily accepted the revised index, the time frame of the two proceedings would be quite similar. Most importantly, when the District of Columbia district court, in August 1979, ordered that the documents, with a few minor exceptions, be released, it carefully parsed the *Vaughn* index [33] and made copious findings in support of its decision. In rejecting any of DOE's generalized claims of exemption, the district court there indicated either that the rationale of the particular exemption did not apply to the documents in issue or that the agency had failed to demonstrate the prerequisites to proper invocation of the exemption. Such analysis would be equally desirable in the present proceeding in which the same exemptions, five and seven, are in issue.[34]

**29.** *See Founding Church of Scientology, Etc. v. Bell*, 603 F.2d 945 (D.C.Cir.1979); *National Ass'n of Government Employees v. Campbell*, 593 F.2d 1023 (D.C.Cir.1978); *Cf. Ray v. Turner*, 587 F.2d 1187 (D.C.Cir.1978); *Theriault v. United States*, 503 F.2d 390 (9th Cir. 1974). Coastal contends that *Coastal States Gas Corp. v. DOE* (1979) Gov. Disclosure (P–H) ¶ 79,112 (D.D.C. Aug. 21, 1979) provides a precedent for such an action. In that case however DOE had been ordered to supplement its initial index, which it did, and adjudication of the claimed exemptions arose on cross motions for summary judgment, thereby indicating that DOE was ready and willing to rest on its proffered index.

**30.** Although Coastal remained purposely ambiguous in its brief about what rule of federal procedure governed its motion, it asserted at oral argument that it had made its motion "under no rule of civil procedure."

**31.** 617 F.2d 854 (D.C.Cir.1980) [hereinafter *Coastal I*].

**32.** *See Coastal States Gas Corp. v. Dept. of Energy* (1979) Government Disclosure (P–14)

¶ 79,112 (D.D.C. Aug. 21, 1979). A related matter, concerning documents allegedly in the possession of a former employee, arose on DOE's motion to dismiss, or in the alternative, for summary judgment and Coastal's opposition thereto.

**33.** Nothing indicates that the *Vaughn* index proffered in *Coastal I* was in any way superior to the one tendered here. In fact, DOE admits that it may have been less satisfactory. *See* II J.A. 422–23.

**34.** While the bulk of the records in the present case are claimed to be exempt under 5 U.S.C. § 552(b)(5) as predecisional intra-agency memoranda or protected by the attorney work-product or attorney-client privilege, some are arguably exempt under § 552(b)(7)(A) because their release would interfere with pending enforcement proceedings. Unlike *Coastal I*, the § 552(b)(3) exemption, covering grand jury materials and the § 552(b)(7)(D) exemption, protecting the identity of confidential sources, were claimed for a very few documents. *See* Was affidavit, III J.A. at 473, 477.

For example, in assessing the merits of DOE's claims to Exemption 5, which is cast in terms of discovery law—protecting documents "which would not be available to a private party in litigation with the agency" —the *Coastal I* court divided that exemption into its three recognized privileges.[35] With respect to the attorney-client privilege, the District of Columbia district court found that DOE failed to establish a fundamental prerequisite to its assertion: confidentiality maintained at the time of, and subsequent to, the communication.[36] Yet in the present case, there appear to be communications between counsel for DOE and agency compliance personnel, requesting advice with respect to information confidentially disclosed by the agency's personnel to counsel, which arguably are exempt under this privilege.[37] And DOE in some instances has made an attempt to establish that disclosure was limited and premised on confidentiality.[38] The district court here, however, did not consider such proffered justifications.

In addressing the attorney work-product privilege, the district court in *Coastal I* held that few of the allegedly exempt documents were being properly withheld, because DOE had failed to demonstrate that the papers were prepared in anticipation of litigation.[39] Here, in contrast, DOE had issued a Proposed Remedial Order to Coastal on September 6, 1978 and is presently engaged in administrative enforcement proceedings, as well as involved as an intervenor in private litigation between Coastal and NEPCo, a public utility which brought an action against a Coastal subsidiary. Nor has Coastal sought to conceal the fact that it wants the documents in conjunction with the ongoing proceedings.[40] While this particular need does not diminish the validity of Coastal's claim,[41] it is relevant to the legitimacy of DOE's claimed exemptions. Unlike *Coastal I*, the affidavit and index filed by DOE in the present case describe documents which contain legal analyses, strategies and mental impressions of DOE attorneys participating in the enforcement proceedings and the NEPCo litigation.[42] These documents, therefore, would appear to fall, at least facially, under the attorney work-product rubric.

Similarly, the existence of enforcement proceedings distinguishes the DOE's Exemption 7 claims made in this case from the unsubstantiated assertions in *Coastal I*.

**35.** 5 U.S.C. § 555(b)(5) reads:
inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
Courts have construed the exemption as safeguarding materials protected under the attorney-client privilege, *Mead Data Central, Inc. v. U. S. Dept. of Air Force*, 566 F.2d 242, 252–55 (1977); the attorney work-product privilege, *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 159, 95 S.Ct. 1504, 1520, 44 L.Ed.2d 29 (1975) and the executive (or agency) deliberative process privilege, *EPA v. Mink*, 410 U.S. 73, 85–90, 93 S.Ct. 827, 835–837, 35 L.Ed.2d 119 (1973).

**36.** Traditionally, the purpose of the attorney-client privilege was to further the adversary process and protect a client's legal right by assuring that the client's confidences to his or her attorney were inviolable. 8 J. Wigmore, Evidence § 2290 at 542 (McNaughton rev. 1961). An agency, moreover, does not usually stand as a "client" nor do its lawyers function as "attorneys" in the sense contemplated by the privilege.

**37.** *See* Was affidavit, III J.A. 481, 487.

**38.** *See* III J.A. 719, 769, *But cf.* III J.A. 768. Any documents deserving protection under the attorney-client privilege would ultimately have to pass the confidentiality test articulated in *Mead Data Central, supra*, that they were circulated only among members "of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication." 566 F.2d at 253 n.24.

**39.** The attorney work-product privilege has uniformly been limited to documents prepared in contemplation of litigation. *See Jordan v. U. S. Dept. of Justice*, 591 F.2d 753 (1978) (en banc); Fed.R.Civ.P. 26(b)(3).

**40.** To the contrary, it has insisted on expedited handling precisely because of the active state of the enforcement proceedings. *See* II J.A. 397–400, 404–05.

**41.** Under FOIA "any person" regardless of motive or need may seek government documents. 5 U.S.C. § 552(a)(3).

**42.** *See* III J.A. at 472, 580–600.

The scope of Exemption 7, which protects investigatory files to prevent "harm to the government's case in court," *N. L. R. B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978), was carefully narrowed by Congress in 1974.[43] As amended, an agency claiming a § 552(b)(7)(A) exemption must establish that the documents were prepared in the course of an investigation and, more importantly, that disclosure would "interfere with enforcement proceedings." While DOE failed to establish this prerequisite in *Coastal I*, because the records pertained to collaborative attempts to achieve voluntary compliance, the ongoing adversary proceedings here provide the necessary foundation for invocation of Exemption 7.

We do not seek to perform the district court's role at this point. Rather, we simply point out that in *Coastal I* the district court had gone through the *Vaughn* index, document by document, and created a detailed record which assessed the factual and legal legitimacy of each claimed exemption. The trial judge avoided both mass disclosure and generic, exemption-wide disclosure.[44] Thus, within the deliberative-process privilege[45] encompassed by Exemption 5, he carefully segregated documents described as drafts, proposals and recommendations, which came within the exemption's purview, from internal advice that was in fact agency policy and which clearly merited disclosure to prevent the formation of secret agency law. In such a context, the court of appeals could rely on a conclusion "*not* that the documents are not exempt as a matter of law, but that the agency has failed to supply us with even the minimal information necessary to make a determination" without fear of harming privacy interests or the agency's internal operations for the district court effectively had canvassed the merits. Because the present case evidently contains many of the prerequisites which establish entitlement to the exemptions, we are reluctant, in the circumstances here, to sanction disclosure on the basis of a record evincing no factual scrutiny of the index.[46]

## C.

The record presents us with a knotty procedural problem, which, as we proceed to unravel it, offers two options. On the one hand we can view the proceeding as a partial summary judgment. A grant of sum-

---

**43.** 5 U.S.C. § 552(b)(7) now reads:

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

**44.** *N. L. R. B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), did hold, however, that court determinations of generic exemptions were permissible.

**45.** *Coastal I* described the various purposes furthered by this privilege:

it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for agency's action.

617 F.2d 854, 866 (D.C.Cir.1980).

**46.** More accurately, there was no consideration of the revised index and we are provided no factual findings on the initial index aside from the general condemnation that it "fails to provide the minimum information essential to an intelligent disposition of the government's claims." I J.A. at 139. Yet in light of the above analysis, an examination of the initial index, *see* II J.A. 181–277, reveals the existence of sufficient factual questions to survive a summary judgment motion.

mary judgment, however, is proper only when no material fact is genuinely in dispute and the moving party is entitled to judgment as a matter of law.[47] Moreover, all "inferences to be drawn from the underlying facts contained in [the movant's] materials must be viewed in the light most favorable to the party opposing the motion."[48] Given the movant's burden to show affirmatively the absence of any disputed factual issue,[49] it is admittedly difficult for a FOIA plaintiff to establish a right to summary judgment with such clarity as to leave no room for controversy, precisely because the agencies necessarily control the information sought.

■ The case at hand illustrates the dilemma a FOIA plaintiff faces in establishing the lack of a material factual issue for summary judgment purposes. Once DOE's revised index was rejected, the only evidence before the court was the initial index. In its "motion for partial judgment" Coastal, perhaps handicapped by lack of access to information, made no attempt to demonstrate that the claimed exemptions were invalid. Even assuming that the initial index alone was insufficient to sustain the agency's final burden, we are impelled to conclude that the minimal information proffered by DOE created enough of a factual controversy to survive the summary judgment threshold.[50]

Similarly, other circuits have been reluctant to grant summary judgment when the record before them indicated facts still susceptible of dispute.[51] As the First Circuit noted,

> Even though the burden of establishing the applicability of an exemption is on

the agency, 5 U.S.C. § 552(a)(4)(B), we think it risky to grant summary judgment when the only competent evidence before the court is the agency's admittedly flawed affidavit.... When the legal issue of the applicability of an exemption depends upon the factual nature of the contents of a document, we think it appropriate to obtain fairly complete information about the factual question before deciding the legal issue.

*Irons v. Bell,* 596 F.2d 468, 471–72 n.6 (1979).

Thus, even if *Coastal I* is understood as endorsing the propriety of summary judgment when confronted by an inadequate *Vaughn* index, we hesitate to extend that case beyond its particular facts. There, as noted above, the district judge carefully surveyed the index and differentiated documents for which the agency clearly failed to establish the legal prerequisites for the claimed exemptions from documents which, on a generous reading, might conceivably fall within an exemption.

In the analogous context of discovery, the Court of Appeals for the District of Columbia, when faced with a clearly inadequate initial *Vaughn* index, has recently refrained from approving a summary judgment ordering disclosure. *See Dellums v. Powell,* No. 80–1134, 642 F.2d 1351 (D.C.Cir.1980). In *Dellums,* the court had previously determined that certain presidential conversations were "substantially material" to a pending civil case and had directed President Nixon to present his objections to the production of transcripts of his taped conversations in a *Vaughn* index.[52] Although the appeals court agreed with the trial

---

**47.** Fed.R.Civ.P. 56(c); *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

**48.** *See Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Janek v. Celebreeze,* 336 F.2d 828, 834 (3d Cir. 1964).

**49.** *See Harold Friedman, Inc. v. Thorofare Markets, Inc.,* 587 F.2d 127, 131 (3d Cir. 1978);

*Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781, 784, 797 (3d Cir. 1978).

**50.** *See* II J.A. at 181–277.

**51.** *Irons v. Bell,* 596 F.2d 468 (1st Cir. 1979); *Nat'l Ass'n of Gov't Employees v. Campbell,* 593 F.2d 1023, 1027 (D.C.Cir.1978).

**52.** The interest in providing plaintiffs in such situations with concededly material documents would appear to be as substantial as the strong disclosure policy behind FOIA.

judge's holding that President Nixon's initial index was insufficient as a matter of law, it concluded that "the District Court should have afforded Mr. Nixon one more opportunity to submit a satisfactory index, rather than to ignore his objections and order the immediate release of all of the transcripts . . ." *Dellums* at 1359. Acknowledging that it had approved the rejection of a "depressingly similar" *Vaughn* index in *Coastal I*, the court of appeals seemed to suggest that claims of privacy or recognized privilege should nevertheless be taken seriously if disputed factual issues still lurk at the summary judgment stage.

■ Further, the absence of any factual findings in the present case renders appellate review most difficult. We have no means of ascertaining whether the district court applied the correct legal standard with respect to the various exemptions claimed. Any distinctions and meritorious exemptions are submerged in a blanket ruling that DOE failed to sustain its burden in any instance. Although we realize that Rule 52(a) removes from the district judge any obligation to make findings of fact and conclusions of law in Rule 56 summary judgment dispositions,[53] the matter before us is an interlocutory injunction, for which

findings of fact and conclusions of law must be set forth.[54] While we in no way seek to denigrate the district court's attempts to slice through a somewhat intractable situation, it would appear to be necessary to articulate some reason why the conclusory exemption claims in DOE's first index failed to survive even the summary judgment threshold. In the future this court, in the exercise of its supervisory powers, will require district courts to state explicitly the legal basis as well as the findings that are necessary to demonstrate that the documents are exempt or disclosable under the FOIA.[55] Articulating such conclusions is, in a sense, implicit in the statutory duty of *de novo* review.[56] We recognize that district courts frequently may be perplexed in the course of fulfilling this duty by inadequate indices much like the present one, but appellate courts are equally disadvantaged when dealing with an unclarified record.

Also, if this were to be deemed a partial summary judgment, it was an abuse of discretion for the district court to refuse to consider the revised index and affidavit. Despite the last minute nature of these submissions, Rule 56(c) permits the adverse party to serve opposing affidavits at any time prior to the day of the hearing.[57]

---

53. Fed.R.Civ.P. 52(a) provides:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

54. It may also be a "case not fully adjudicated on the merits" for purposes of Rule 56(d), which similarly requires the district court "if practicable [to] ascertain what material facts exist without substantial controversy . . ."

55. *See Founding Church of Scientology, Etc. v. Bell*, 603 F.2d 945 (D.C.Cir.1979); *Schwartz v. IRS*, 511 F.2d 1303 (D.C.Cir.1975).

56. *See* 5 U.S.C. § 552(a)(4)(B); *Founding Church of Scientology, Etc. v. Bell*, 603 F.2d 945, 950 (D.C.Cir.1979), discussed *infra* at 26.

57. Fed.R.Civ.P. 56(c) provides:

Motion and Proceedings Thereon.
The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as

## D.

Coastal argues, on the other hand, that we should construe the district court proceeding as a plenary hearing and final judgment. This perspective, however, highlights the inadequacy of the notice to DOE. Because of the ambiguous nature of the motion for partial judgment, DOE had no warning that it had to present its entire evidentiary case at the hearing scheduled for February 28, 1980. Moreover, the record does not reveal that the agency was given a full opportunity to contest the motion. No evidence addressed to the legal validity of the exemptions was taken, nor were attempts made to resolve factual matters that were in dispute.[58] There is also no basis on which DOE could have anticipated that it was obligated to rest its case on its initial index alone. Indeed, the mass of FOIA precedents indicates a willingness by the courts to permit revisions of unsatisfactory initial indices,[59] to accept submissions of additional affidavits,[60] to conduct *in camera* review [61] or to suggest *in camera* review on remand.[62] Even in *Coastal I*, the court considered a supplemented index in making its summary judgment ruling. While we in no way encourage agency dilatoriness, and in the future will adopt the suggestion of the Court in *Coastal I*, requiring agencies to supply sufficient information *the first time* in order to allow courts to make a reasoned determination respecting the legitimacy of exemptions,[63] we are nonetheless unable to affirm the district court here, inasmuch as DOE could not have expected to be restricted to its initial index and, at the same time, faced with final judgment.

The district court was confronted with a panoply of alternatives. It could have considered the new affidavit and the revised index, engaged in *in camera* review, or set the case for trial. In foregoing all possibilities of reaching a judgment on the merits based on an assessment of the factual contents of the documents, yet failing to preface the holding that DOE had contravened the FOIA policy of full and expeditious disclosure with any procedural deadline, the district court was effectively abjuring the statutory duty of *de novo* review.

In a sense, the obverse of what occurred in *Founding Church of Scientology, Etc. v. Bell*, 603 F.2d 945 (D.C.Cir.1979), took place here. In *Founding Church*, after lengthy district court proceedings which included production of a *Vaughn* index, eleven affidavits and oral argument, the district court, noting that the FBI had released portions of three-quarters of the 1,000 pages requested, apparently adopted a substantial compliance rationale and granted summary judgment for the government. 603 F.2d at 948. The appellate court, however, found the index inadequate and confusing, and stated that the district court had misinterpreted several substantive provisions of the FOIA. Remarking that "District Court decisions in FOIA cases must provide statements of law that are both accurate and sufficiently detailed to establish that the careful *de novo* review prescribed by Con-

---

a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**58.** *See* II J.A. 386–464.

**59.** *See Founding Church of Scientology, Etc. v. Bell*, 603 F.2d 945 (D.C.Cir.1979); *Tarnapol v. FBI*, 442 F.Supp. 5 (D.D.C.1977).

**60.** *See Abramson v. FBI*, No. 79–2500 (D.C.Cir. Oct. 24, 1980); *Mead Data Central, Inc. v. U. S. Dept. of Air Force*, 566 F.2d 242 (1977).

**61.** *See Parke, Davis & Co. v. Califano*, 623 F.2d 1 (6th Cir. 1980).

**62.** *See Irons v. Bell*, ·596 F.2d 468 (1st Cir. 1979).

**63.** *Cf. Dellums v. Powell*, No. 80–1134, (D.C. Cir. Oct. 24, 1980); *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854 (D.C.Cir.1980). The statute does provide agencies with specific procedures for obtaining extensions of time. 5 U.S.C. § 552(a)(6)(B). If agencies make no attempt to comply with the statutory deadlines, courts should not be deprived of the opportunity to impose appropriate sanctions in a procedurally orderly fashion.

gress has in fact taken place," [64] the court concluded that the "substantial compliance" test adopted by the trial court was inappropriate for dealing with FOIA issues. Just as the district judge in *Founding Church* should have assured itself that nondisclosure of the remaining documents actually conformed to the requirements of a particular exemption, here the district court should have made some attempt to satisfy itself that the exemptions claimed by the agency were not supported by substantiated claims.[65] Arguably, in light of the FOIA policy of full access to information, nondisclosure based on inadequate court scrutiny is perhaps more offensive than disclosure following minimal court review. But failure to discharge the duty of *de novo* review sacrifices legitimate interests in either case.

■ Because Coastal's ambiguous partial judgment motion provided DOE with insufficient warning that the case might be disposed of finally, it would be an abuse of discretion not to consider the available affidavit, the revised index, or a limited *in camera* review of representative documents before entering final judgment on the merits. FOIA was enacted against the backdrop of the Federal Rules of Civil Procedure,[66] and although some express alterations were made,[67] systematic and fair proceedings were not abrogated. Therefore, even if the court had authority to impose the sanction it did, we hold it was necessary to do so in a procedurally orderly fashion.

### E.

We now address Coastal's fourth claim, namely that special circumstances justified the "partial judgment." Coastal argues that expedition is essential not only on account of FOIA's mandate but because without access to the documents, Coastal will be prejudiced in the DOE enforcement proceedings. The district judge appears to have been troubled by the potential inequities of the situation: preliminary discovery was progressing quickly before the agency hearing board, yet the same agency's dilatoriness in the FOIA action threatened to hamper Coastal's ability to argue its position most effectively.

Case law, however, protects Coastal's right to obtain non-exempt documents before agency proceedings are closed and irreparable harm occurs. In *Renegotiation Board v. Bannercroft Clothing Co.*, 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974), the Supreme Court accepted the proposition that a district court could exercise jurisdiction to enjoin agency action pending the resolution of a FOIA claim. Although the Court declined to decide under what circumstances such an exercise of jurisdiction would be proper, it asserted that Congress' express vesting of equitable jurisdiction in the district courts by § 552(a)(4) in no way limited the inherent powers of an equity court.[68]

■ Significant for present purposes is that FOIA's central aim is to ensure an informed citizenry and to hold the governors accountable to the governed. Congress did not intend FOIA to function as a private discovery tool. *See N. L. R. B. v.*

---

**64.** *Founding Church of Scientology, Etc. v. Bell*, 603 F.2d 945, 950 (D.C.Cir.1979).

**65.** This Court in *Ferri v. Bell*, No. 78–0841 (3d Cir., March ——, 1980) recently described the district court's role of *de novo* review when confronted with conclusory claims of exemption in the agency's affidavit. We noted, "it is critical for the court to determine whether the information sought is as the government describes it." It would appear that the district court should seek to determine whether the government's characterization of the records is correct prior to compelling disclosure as well as prior to permitting withholding.

**66.** *See* Note, *In Camera Inspection Under the Freedom of Information Act*, 41 U.Chi.L.Rev. 557, 558 n.14 (1974).

**67.** 5 U.S.C. § 552(a)(4)(C) (agency required to answer complaint within 30 days rather than 60 day period normally allowed government defendant).

**68.** The holding in that case, which involved a contract renegotiation, qualified the district court's injunctive power by requiring a contractor to pursue first his administrative remedy. *See Renegotiation Board v. Bannercroft Clothing Co.*, 415 U.S. 1, 20, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123 (1974).

*Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2326, 57 L.Ed.2d 159 (1978); *Renegotiation Board, supra,* 415 U.S. at 22,[69] 94 S.Ct. at 1039. Quite appropriately, then, the district court's denial of DOE's motion to stay the disclosure order was premised on harm to the public and harm to the "letter and spirit of the FOIA" —the Court specifically could "not find that Coastal would suffer substantial harm as a result of the granting of a stay."[70] Therefore, precisely because Coastal would not be penalized by failure to obtain immediate access to the documents, the "special circumstances" here are an insufficient justification for granting the procedurally-truncated "partial judgment" motion.

Coastal's special circumstances argument apparently encompasses its claim that the district judge's order should be affirmed as an exercise of the court's inherent power to control its docket. It contends that the power to move litigation expeditiously is simply the converse of the inherent power to stay; therefore, enjoining disclosure and striking the revised *Vaughn* index amounted to no more than a refusal to grant a stay. DOE, for its part, acknowledges the district court's right to control its docket, but maintains that the agency has not violated any court order so as to merit such abrupt and final treatment.

■ From a technical perspective, DOE may not have violated any court orders, but it has failed to fulfill certain representations it made to the court and has evinced an indifference to complying in a timely manner throughout this suit. Nevertheless, we do not believe that the court's inherent power to control the proceedings before it nor the grant of equity power accorded by § 552(a)(4), justify the order that was entered. DOE had no reason to expect that its revised index would not be accepted. It is even plausible that DOE was attempting to accommodate Coastal by anticipating the outcome of the motion, which in fact sought production of an "adequate, new and verified *Vaughn* index" as an alternative form of relief.[71] The court's inherent power is intended to further "the orderly administration of justice," not to frustrate reasonable expectations of the litigants.

Nor do we believe that Congress contemplated such results by vesting district courts with equitable powers under § 552(a)(4). Because FOIA directs that documents be disclosed to "any person" regardless of need or purpose, it would be inconsistent to read the grant of equity power to permit discrepant treatment of parties depending on their interests or circumstances.[72] Indeed, it has been suggested that the use of the statutory word "enjoin" triggers the court's discretionary power to *refuse* to enforce the Act as well as to enforce it, whenever equity considerations so require.[73] From this standpoint, a court's duty may reside in refusing to enjoin violations of FOIA based on "mistakes made in good faith."[74] Without deciding whether DOE's delays resulted despite good faith efforts—bad faith has not been alleged—we simply note that the court's equitable powers in this case would be exercised most effectively by enjoining

---

**69.** Congressional concern with the plight of those forced to litigate with agencies on the basis of secret laws however was a "subsidiary statutory purpose." *See* S.Rep.No.813, 89th Cong., 1st Sess., 7 (1965); H.R.Rep.No.1497, 89th Cong., 2nd Sess., 8 (1966). While Coastal did not raise this claim, it did state that the records were "urgently needed . . . to enable it to properly represent itself in the proceedings before the agency relating to the PRO." Complaint, I J.A. at 8. The difficulty of litigating with incomplete information might be viewed as a secondary congressional concern as well.

**70.** *See* Memorandum Opinion denying defendant's motion for a stay, I J.A. at 173.

**71.** *See* Plaintiff's Motion for Partial Judgment and to Compel an Adequate *Vaughn* index. I J.A. at 62.

**72.** The previous section 3 of the Administrative Procedure Act provided for disclosure only "to persons properly and directly concerned," indicating that Congress was conscious of the implications of the change to "any person." *See* Source Book at 244; Davis, *The Information Act,* 34 U.Chi.L.Rev. 761, 765 (1967).

**73.** *See* Davis, *supra,* n.72 at 767.

**74.** *Cf. The Hecht Co. v. Bowles,* 321 U.S. 321, 328, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944).

the agency enforcement action, should the circumstances demand it, and not by abruptly terminating the FOIA proceedings.

## IV.

The difficulty of reconciling a district court's *de novo* power of review with an agency's statutory burden of proving its right to exemptions has generated many of the problems underlying the present controversy. As explained in the legislative history, the district court's role is integral to effectuation of the disclosure policy of FOIA.[75] Yet the legislative history also indicates that the goal of citizen access to government information was not intended to overwhelm legitimate privacy interests.[76] The task facing district courts is to transform a potentially ineffective, inquisitorial proceeding against an agency that controls the information into a meaningful adversarial process.

*In camera* inspection, which provides a basis for an individualized determination whether a particular document is factually exempt, has a certain surface appeal as a technique for exercising *de novo* review and ensuring the validity of alleged exemptions. But the inability of the party making a request under FOIA to offer an alternative interpretation of the records, the difficulty of contesting such a ruling on appeal, the burden such a time-consuming procedure places on district courts, the paucity of information available to appellate courts on review, and the limited precedential value of decisions based on *in camera* scrutiny all underscore the inadequacies of such an arrangement.[77] Consequently, the *Vaughn*

index, which requires factually-grounded and specifically-indexed justifications for withheld documents, was developed as a preferred device for creating a more balanced and effective relationship between the parties and the court. Ideally, FOIA plaintiffs would acquire the knowledge crucial for debating government claims of exemption, and district courts would obtain the information necessary for reaching a reasoned decision on disclosure. If the agency's index fails to characterize accurately the contents of withheld documents, however, the court's *de novo* review is frustrated and the agency's burden of proof falls, in effect, on the FOIA plaintiff who, in contravention of the statutory scheme, must prove the document is not exempt.[78]

To prevent such a reversal of statutory roles, it would not be unreasonable to require an agency, in order to survive summary judgment, to rest on its first *Vaughn* index. The statute specifically outlines a schedule embodying the congressional judgment regarding the time needed for an adequate agency response. 5 U.S.C. § 552(a)(6)(A)–(C). Extensions are provided in order to accommodate requests for large numbers of documents entailing nationwide searches. 5 U.S.C. § 552(a)(6)(B)(i)–(iii). Thus, nonproduction of evidence on account of undue delay or production of a grossly inadequate index which fails to indicate any material factual dispute, would constitute an "improper withholding" for purposes of the Act at the summary judgment stage. Similarly, the district judge would be justified in listing a case for early trial and in then finding an

---

**75.** "The proceedings are to be *de novo* so that the court can consider the propriety of the withholding instead of being restricted to judicial sanctioning of agency discretion." H.Rep. No.1497, 89th Cong.2d Sess. (1966), U.S.Code Cong. & Admin.News 1966, p. 2426, *reprinted in* Source Book at 30; S.Rep.No.813, 89th Cong., 1st Sess. (1965) *reprinted in* Source Book at 43.

**76.** "At the same time that a broad philosophy of 'freedom of information' is enacted into law, it is necessary to protect certain equally important rights of privacy with respect to certain information in Government files, such as medi-

cal and personnel records. It is also necessary for the very operation of our Government to allow it to keep confidential certain material, such as the investigatory files of the Federal Bureau of Investigation." S.Rep.No.813, 89th Cong., 1st Sess. (1965) *reprinted in* Source Book at 38.

**77.** *See* Note, *In Camera Inspections Under the FOIA*, 41 U.Chi.L.Rev. 557, 558–60 (1974).

**78.** *See* Note, *Vaughn v. Rosen: Toward True Freedom of Information*, 122 U.Pa.L.Rev. 731, 734–35 (1974).

improper withholding if the agency fails to sustain its burden by producing an adequate, or supplemented, *Vaughn* index if so ordered. And if necessary, a district court would be permitted to enforce its *Vaughn* index production order and hold the agency to its statutory burden of proof by invoking appropriate sanctions.[79] Under such a format, improper withholding would subsume problems of both the prompt production and the factual adequacy of a *Vaughn* index.[80] And a court would properly exercise its *de novo* review role in demanding that agencies satisfy both elements in order to carry their burden of proof.

Here, however, the district court refused to consider the revised index, although the Rules require that such documents and affidavits be considered before a summary judgment. Nor did the trial judge preface his disclosure order with any notice that a final judgment on the merits, in reliance solely on the initial index, was forthcoming. Because DOE was not apprised that it would be required to submit to a final adjudication on the basis of the first index, the judgment of the district court will be vacated and the case remanded for further proceedings consistent with this opinion.

---

**79.** It was recognized at the time of the *Vaughn* decision that the index requirement would impose a substantial burden on an agency seeking to withhold documents. In the absence of any structural incentives that would otherwise spur government disclosure, the *Vaughn* decision was intended to "sharply stimulate what must be, in the final analysis, the simplest and most effective solution—for agencies voluntarily to disclose as much information as possible and to create internal procedures that will assure that disclosable information can be easily separated from that which is exempt." *Vaughn v. Rosen*, 484 F.2d at 828.

**80.** We are, of course, not unaware that difficulties arise when "improper withholding" comprehends both findings of non-exemption based on *actual* knowledge of the records involved as well as *inadequate* knowledge of the records caused by the agencies' inability or unwillingness to provide the requested information. Third parties' privacy interests as well as national security concerns may be jeopardized by the agency's failure to carry its statutorily-assigned burden. And courts in the future may find that exactly how they choose to exercise their *de novo* review role, and the desirability of *in camera* review, may turn on whether the agency's own interests, or third party or important public interests, are at stake. Thus, a court faced with inadequately supported Exemption 5 claims for internal agency memoranda might order disclosure despite incomplete knowledge of the records involved, since only the agency's vested interests are in issue. Insofar as the agency may be concealing a body of secret agency law, or even its own mistakes, a court might not hesitate to penalize agency delay in providing sufficient information to carry its burden of proof by ordering disclosure. But if agency dilatoriness potentially were to have adverse effects on third parties or national security interests, then a court might resort to *in camera* review to assure that the documents were factually non-exempt before ordering disclosure. Because *de novo* court review was intended to prevent deference to agency judgment, secrecy, or inertia, the extent to which this supervisory review requires courts to ascertain affirmatively the contents of the records, as opposed to rule solely on the agency's failure to carry its burden of proof, may well be informed by *whose* interests are involved.

See e. g., *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C.Cir.1978); Note, *In Camera Inspection Under the FOIA, supra* note 77.